IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PHILIP J. HINDS, | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 07-6112-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

Plaintiff Philip Hinds challenges the Commissioner's decision finding him not disabled

and denying his application for Supplemental Security Income ("SSI"). I have jurisdiction under

42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is REVERSED and

REMANDED for the immediate calculation and award of benefits.

I review the Commissioner's decision to ensure the Commissioner applied proper legal

standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Administrative Law Judge ("ALJ") made his decision based upon a five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (9ᵗʰ Cir. 1987); 20 C.F.R. § 416.920(a). Mr. Hinds challenges the ALJ's findings at step two in the sequential proceedings, the ALJ's evaluation of Mr. Hinds's testimony, and the ALJ's evaluation of the opinions of two physicians.

## The ALJ'S FINDINGS

The ALJ found Mr. Hinds's lumbar degenerative disc disease, diabetes mellulitis, obesity, and marijuana dependence "severe" at step two in the sequential proceedings. AR 16. The ALJ assessed Mr. Hinds's RFC:

> [T]he claimant has the residual functional capacity to occasionally and frequently lift and/or carry 10 pounds; stand and/or walk at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday (with alternate sitting and standing throughout the day); and, engage in unlimited pushing and pulling to the extent he can lift and carry. The claimant has constant limitations regarding climbing ladders, ropes, or scaffolds, as well as occasional postural limitations regarding climbing ramps or stairs, stooping, or crouching. He should avoid all exposure to hazards (e.g. machinery, heights, etc[.).]

AR 18. The ALJ found that this RFC precluded performance of Mr. Hinds's past relevant work at step four, but allowed him to perform jobs existing in the national economy at step five. AR 23. The ALJ therefore found Mr. Hinds not disabled. AR 23-24.

## ANALYSIS

### I.    The ALJ's Step Two Finding

Mr. Hinds submits that the ALJ erroneously found his diabetic neuropathy non-severe at step two in the sequential proceedings. Pl.'s Opening Br. 15-16.

At step two, the ALJ determines if the claimant has a "severe" impairment.  20 C.F.R. §

416.920(a)(4)(ii).  An impairment is "severe" if it "significantly limits your ability to do basic work

activities."  20 C.F.R. § 416.920(c), *see* also 20 C.F.R. § 416.921.  Such an impairment must last,

or be expected to last, twelve months.  20 C.F.R. § 416.909.

The ALJ found Mr. Hinds's diabetes mellitus severe at step two.  AR 16.  The ALJ's step

two discussion included reference to Mr. Hinds's "ongoing complaints of lower extremity

numbness," which the ALJ described as "polyneuropathy, likely secondary to his diabetes." AR 17.

Here the ALJ noted that this diagnosis was based upon nerve conduction studies and a lumbrosacral

MRI which did not show nerve root involvement.  *Id.*

The Commissioner now asserts that the record does not support Mr. Hinds's "claim of

peripheral neuropathy." Def.'s Br. 6.  In a footnote, the Commissioner states that "Although Plaintiff

may have been diagnosed with 'evidence' of peripheral neuropathy (Tr. 505), the medical and

testimonial record clearly demonstrates [sic] that this alleged impairment did not rise to the level of

significant impairment at step two."  *Id.* n1.  The record shows that Drs. Bell and Glassman

diagnosed peripheral neuropathy and did not restrict their diagnoses to "evidence" only.  AR 394,

447.  Their opinions are discussed below.  The court notes that the Commissioner's present

submission contradicts the record as well as the ALJ's own findings.

However, the ALJ's analysis at steps four and five must consider all of a claimant's

impairments, both severe and non-severe.  20 C.F.R. § 416.945(a)(2).  The ALJ's step four and step

five analysis must consider a claimant's impairments in full, and for this reason it is insignificant that

the ALJ's step two finding did not distinguish between Mr. Hinds's diabetes and his peripheral

neuropathy.  Because the ALJ proceeded beyond step two in the sequential analysis, the court will

consider the effect of any step two omission in addressing the ALJ's subsequent sequential findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9ᵗʰ Cir. 2007) (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis). These consequences are discussed below.

## II.      Mr. Hinds's Credibility

Mr. Hinds submits that the ALJ failed to give clear and convincing reasons for rejecting his testimony.

The ALJ found Mr. Hinds "not wholly credible," specifically finding that Mr. Hinds has not "provided convincing details regarding factors that precipitate his allegedly disabling symptoms." Tr. 20. The ALJ made the following findings: (1) Mr. Hinds's testimony contradicted the medical record; (2) Mr. Hinds exaggerated his symptom testimony; (3) Mr. Hinds made inconsistent statements "regarding matters relevant to the issue of disability;" (4) Mr. Hinds failed to follow treatment; and (5) Mr. Hind's activities of daily living did not support a finding of disability. *Id.* The Commissioner repeats the ALJ's findings at each of these instances but does not discuss the legal standards pertaining to each prong of this analysis. Def.'s Br. 5-8. I address each of the ALJ's findings below.

### A.      Credibility Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9ᵗʰ Cir. 1991) (en banc)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may consider objective

medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work

record, and observations of physicians and third parties with personal knowledge of the claimant's

functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ may

additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent

statements regarding symptoms by the claimant.  *Id.*  Once a claimant shows an underlying

impairment, the ALJ may not, however, make a negative credibility finding "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."

*Robbins* v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 1998).

    **B.      Analysis**

    **a.      Medical Record**

    The ALJ found that the "course and frequency" of Mr. Hinds's treatment does not support

his allegation of disability.  AR 21.  The ALJ first noted that Mr. Hinds "continued on a very

conservative course of treatment for an extended period."  *Id.*  The ALJ also found that Mr. Hinds's

medical record contradicts his allegations of pain.  AR 20.  The ALJ wrote, "the weight of the

medical evidence amply demonstrates that [Mr. Hinds's] fusion was successful and there is no

evidence of failure necessitating a second surgery or hardware removal."  *Id.*  The Commissioner

asserts that these MRI studies and selected examination reports support this analysis because they

failed to show tumor, infection, or nerve entrapment.  Def.'s Br. 5.

    The record shows that Mr. Hinds had a laminectomy in March 2003.  AR 230-37.  Mr. Hinds

consistently reported that his back pain continued between April 2003 and June 2003, when the

record closes.  AR 290, 408, 432-36, 446, 464, 486, 518-21, 532, 584, 549, 555-57, 601.  In March

PAGE 5 - OPINION AND ORDER

2005 examining physician Dr. Glassman assessed "chronic laminectomy syndrome," and suggested Mr. Hinds obtain a neurosurgical consultation.    AR 447.   In April 2005 another examining physician, Dr. Parvin, stated that Mr. Hinds "has a likely pseudoarthrosis."[1]  AR 453.  Dr. Parvin referred Mr. Hinds to a pain management physician and stated that Mr. Hinds might need a second surgical intervention if he continued to experience intolerable pain.  AR 454.

The record thus contradicts and does not support the ALJ's finding that Mr. Hinds's laminectomy was "successful."  The ALJ's discussion of the opinions of Drs. Glassman and Parvin omitted reference to their findings that Mr. Hinds's post-surgical history included a diagnosis of "laminectomy syndrome."  While the ALJ noted that both physicians recommended conservative measures rather than immediate surgical intervention (AR 19), the record does not support the ALJ's conclusion that Mr. Hinds's medical record refutes his symptom testimony.  This analysis is not sustained.

**b.      Exaggeration and Clinical Examination**

The ALJ also stated that examining physician Dr. Glassman observed Mr. Hinds "self limiting."  AR 19.  The ALJ subsequently found that other tests conducted by Dr. Glassman "suggested a non-organic component to the claimant's pain symptoms."  *Id.*

Dr. Glassman's indicated statement reads in full, "lumbar [range of motion] is self limiting with obvious splinting, grimacing, and groaning present."  *Id.*  However, Dr. Glassman did not state that he believed Mr. Hinds exaggerated his responses in examination.  Dr. Glassman instead wrote,

---

[1]Pseudoarthrosis, or a false joint, is a joint that develops at the site of a former fracture. Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health Dictionary* ( 5th ed. 1998).

"no functional[2] pain behavior noted." AR 447. The ALJ's conclusion thus contradicts Dr. Glassman's own summary of his examination.

The ALJ concurrently stated that treating physician Dr. Bell found Mr. Hinds's tenderness upon examination "disproportionate" to objective findings and noted "give-way weakness." AR 20. The ALJ concluded that Dr. Bell's examination was "compromised 'due to give-way weakness in the setting of significant pain.'" *Id.* Dr. Bell's full diagnostic impression reads, "Refractory back and leg pain, possible lumbrosacral radiculopathy though compromised exam due to give-way weakness in the setting of significant pain (polyneuropathy as characterized below)." AR 394. Dr. Bell subsequently diagnosed "polyneuropathy, presumed diabetic polyneuropathy with associated mild sensory ataxia." *Id.* Dr. Bell's August and September 2004 examination reports again discussed Mr. Hinds's polynueurpathy in greater detail and specifically referred to nerve conduction studies. AR 504-07.

The Commissioner presently repeats the ALJ's analysis. Def.'s Br. 6. Dr. Bell did not state that the "compromised" aspect of his neurological examination undermined his own diagnostic conclusions. Dr. Bell's notes furthermore do not support the ALJ's inference that Mr. Hinds exaggerated his pain in examination. The ALJ's findings that Drs. Glassman and Bell demonstrated that Mr. Hinds exaggerated his symptoms is not based upon their clinical examination reports. These findings are not sustained.

///

---

[2]Functional overlay is "an emotional aspect of an organic disease," which may occur "as an overreaction to an illness." It is characterized by symptoms that continue "long after clinical signs of the disease have ended." Anderson, *Mosby's Medical, Nursing, & Allied Health Dictionary*.

PAGE 7 - OPINION AND ORDER

c.      **Inconsistent Statements and Activities of Daily Living**

The ALJ found that Mr. Hinds "made inconsistent statements regarding matters relevant to

the issue of disability." AR 20.  Here the ALJ noted Mr. Hinds's April 2006 hearing testimony that

he is bedridden due to pain and Mr. Hinds's report that he went dancing with his girlfriend in

November 2005.  AR 20.  The ALJ concluded:

> Although the claimant contended at the hearing that he "only danced
> a couple of dances and didn't move his feet much" and it took him "a
> couple of days to recover" from this activity, this explanation is
> implausible in view of the claimant's 10 pound weight loss between
> October and November 2005.

*Id.*

The Commissioner again asserts the ALJ's inference that Mr. Hinds's dancing activity lead

to a ten pound weight loss, and that this weight loss establishes that Mr. Hinds engaged in activity

inconsistent with his allegation of disability.  Def.'s Br. 7.  Mr. Hinds testified that his dancing

activity was limited.  The ALJ may make "inferences reasonably drawn from the record." *Batson*,

359 F.3d at 1193.  However, this court disagrees that Mr. Hinds's dancing activity necessarily

establishes a ten pound weight loss which, in turn, undermines Mr. Hinds's credibility.  This

inference is unsupported and is not sustained.

d.      **Failure to Follow Treatment**

After discussing Mr. Hinds's ten pound weight loss, the ALJ stated that Mr. Hinds "failed

to follow-up on recommendations made by virtually every treating or examining doctor to increase

his activity, exercise, engage in physical therapy, or lose weight." AR 21. The ALJ provided no

citation for these assertions.  The court also notes that this finding is inconsistent with the ALJ's

finding, discussed above, that Mr. Hinds engaged in activity causing weight loss.

PAGE 8 -  OPINION AND ORDER

The record shows that consulting physician Dr. Davis stated that he would advise Mr. Hinds to follow a diabetic diet for weight loss in November 1998.  AR 162-63.  Consulting physician Dr. Wagner also suggested that Mr. Hinds obtain a referral for dietary counseling in February 2000.  AR 183.  The record shows no other instructions regarding activity and weight loss.  While the record shows that treating physician Dr. Bell directed Mr. Hinds to "continue with physical therapy" in August 2004, the record does not show whether Mr. Hinds did or did not engage in physical therapy.  For these reasons, the ALJ's finding that Mr. Hinds failed to follow physician recommendations is not based upon the record and not sustained.

The ALJ also stated that treating physician Dr. Pittinger "has consistently characterized [Mr. Hinds's] medical condition as 'poorly controlled' or 'out of control.'"  AR 21.  The record shows that Dr. Pittinger stated that Mr. Hinds's diabetes was subject to poor control.  AR 456.  Other physicians also repeatedly characterized Mr. Hinds's diabetes and, in some instances, his hypertension, as "uncontrolled."  AR  162, 399, 407-08, 410, 435, 455-56, 506, 519-22, 532, 550, 568, 601.  However, the record does not support the ALJ's inference that all of Mr. Hinds's medical care remains "out of control," and that this lack of control establishes a failure to follow treatment. This inference is not based upon the record and is not sustained.

e.      **Work History**

Finally, the ALJ noted that Mr. Hinds "worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairment."  AR 21.  The ALJ subsequently stated that the record contains evidence "suggesting that the claimant lacks motivation to work." *Id.*

The ALJ may consider a claimant's work history in his credibility finding. *Smolen*, 80 F.3d

at 1284.  The ALJ's assessment of Mr. Hinds's work activity is based upon the record and should

be sustained.

This court may sustain an ALJ's overall adverse credibility finding if limited elements of the

ALJ's analysis are not adequately supported.  *Batson*, 427 F.3d at 1197.  However the ALJ's

remaining finding must amount to a "clear and convincing" analysis.  *Id.* at 1196, 1197.  The ALJ's

finding that Mr. Hinds has a poor work history does not establish such analysis, and the ALJ's

credibility decision is therefore not sustained.

## III.   Medical Source Statements

### A.       Examining Physician Dr. Glassman

Mr. Hinds contends that the ALJ inappropriately evaluated examining physician Dr.

Glassman's opinion.  Pl.'s Opening Br. 15-16.  Dr. Glassman conducted an examination for

Disability Determination Services ("DDS") on March 16, 2005.  AR 446-48.  Dr. Glassman assessed

noninsulin dependent diabetes, diabetic neuropathy, hypertension, depression, "status post L4-S1

laminectomy," and chronic laminectomy syndrome.  AR 447.  Dr. Glassman concluded that Mr.

Hinds "may benefit from a neurosurgical second opinion," and found that Mr. Hinds "should be able

to lift 5 pounds occasionally and sit and stand for a combination of four hours per day with frequent

breaks (i.e. 5 minutes every half hour)."  AR 448.

The ALJ noted Dr. Glassman's examination results.  AR 19.  The ALJ cited Dr. Glassman's

work restrictions, and stated that Dr. Glassman based his restrictions upon tests which the ALJ

suggested established a "non-organic component" to Mr. Hinds's symptoms.  *Id.*  Dr. Glassman

specifically wrote, "no functional pain behavior noted." AR 447.  This statement contradicts the

ALJ's inference that Dr. Glassman based his limitations upon Mr. Hinds's self-reported and

exaggerated limitations.  The ALJ's analysis of Dr. Glassman's opinion is therefore not based upon the record and is not sustained.

### B.       Treating Physician Dr. McCurry

Dr. McCurry wrote that Mr. Hinds's chronic low back pain "is the source of his disability. I think he is unable to work.  It is unclear whether or not further treatment such as physical therapy or work hardening would be beneficial in getting him back to work."  AR 408.  Dr. McCurry concluded, "I doubt he is going to ever be able to do his work [because] of injury.  He may have to be retrained at something more sedentary."  *Id.*

Mr. Hinds now asserts that the ALJ ignored Dr. McCurry's opinion that Mr. Hinds is "unable to work," and that this opinion should be credited.  Pl.'s Opening Br. 17.  The ALJ noted Dr. McCurry's opinion that Mr. Hinds should be restricted to sedentary work.  AR 20.  The ALJ's finding is based upon the record therefore affirmed.

### <u>REMAND</u>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  *Harman,* 211 F.3d at 1178, quoting *Smolen,* 80 F.3d at 1292.

PAGE 11 -  OPINION AND ORDER

The ALJ presently failed to provide legally sufficient reasons for rejecting Mr. Hinds's testimony. The ALJ's reasoning is furthermore not based upon the record. This evidence is credited. *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second *Harman* prong. *Harman*, 211 F.3d at 1178. Here, neither party suggests the record warrants further development and the court finds no ambiguity in the record.

Finally, the court must determine whether the record clearly requires award of benefits after the improperly rejected evidence is credited. *Harman*, 211 F.3d at 1178. This turns upon the effect of Mr. Hinds's testimony upon his RFC assessment and a vocational expert's subsequent testimony regarding the effects of that assessment. *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).

Mr. Hinds testified that he requires bedrest nearly twenty hours per day. AR 45. The ALJ did not secure the testimony of a vocational expert at Mr. Hinds's hearing. AR 31. However, the ALJ sent a letter to the vocational expert containing hypothetical questions. AR 150-51. The ALJ's second hypothetical question reads:

> This hypothetical question is based on the claimant's testimony. His testimony and that of his mother was that the claimant spends on an average 8 hours per day in bed. If accepting this condition as a medical necessity, experience and common sense tell me that an individual would be unable to engage in any substantial gainful activity on a sustained basis. If this an accurate conclusion would you please so advise?

AR 151. The vocational expert stated that such an individual "could not perform work in the competitive labor market." AR 149.

Crediting Mr. Hinds's testimony therefore establishes that he cannot perform work in the

PAGE 12 - OPINION AND ORDER

national economy at step five in the sequential proceedings.  For this reason, the matter is remanded

for the immediate calculation and award of benefits.

## CONCLUSION

The Commissioner's decision that Mr. Hinds did not suffer from disability and is not entitled

to benefits under Title XVI of the Social Security Act is not based upon correct legal standards and

is not supported by substantial evidence.  The Commissioner's decision is REVERSED and

remanded for the immediate calculation and award of benefits.

IT IS SO ORDERED.

Dated this __29th__ day of September, 2008.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge